No. 02-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 267

DARREN RICE,

        Plaintiff and Respondent,

   v.

STATE OF MONTANA,
Department of Labor and Industry,
Unemployment Insurance Division,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                   In and for the County of Lincoln,
                   The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Charles K. Hail, Montana Department of Labor & Industry, Helena, Montana

        For Respondent:

        ( No Respondent's Brief Filed )

                      Submitted on Briefs: August 8, 2002

                      Decided:  November 26, 2002

Filed:

                               Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Respondent, Darren Rice, appealed the Montana Board of Labor and Appeals' October 11, 2001, decision which denied him unemployment benefits to the District Court for the Nineteenth Judicial District in Lincoln County.  The District Court reversed the Board of Labor and Appeals' decision and awarded Rice retroactive unemployment benefits.  The State of Montana appeals the District Court's decision.  We affirm the Order of the District Court.

¶2    The sole issue on appeal is whether § 39-51-2302, MCA, barred Rice's claim for unemployment benefits as a matter of law.

FACTUAL AND PROCEDURAL BACKGROUND

¶3    The facts in this case are undisputed.  Rice was diagnosed with, and began treatment for, bi-polar disorder on September 21, 1998.  On October 14, 1999, he was hired by Interstate Transfer and Storage (Interstate Transfer), as a full time long haul truck driver.  As a long haul truck driver, Rice was required to travel long distances and remain on the road for extended periods of time.  When he was hired, his bi-polar condition was being successfully treated through medication and he was fully qualified as a commercial truck driver pursuant to state and federal regulations.

¶4    On or around June 8, 2001, Rice suffered from a blackout while visiting his home in Libby, Montana.  Following the blackout, he sought medical advice about his condition at the Libby Prompt Care walk-in clinic.  After consulting with an emergency room doctor, a Licensed Practitioner Nurse (LPN) authorized Rice to take four days

2

off work, advised him to refrain from driving, and advised him to seek further assistance from his regular doctor, Dr. Gregory Winter. Rice informed Interstate Transfer that he would not be returning to work as scheduled and that he would contact them when he had more information concerning his condition. He was unable to immediately contact Dr. Winter at the Fort Harris VA hospital. However, the two VA counselors he talked to concurred with the LPN's opinion that he should not return to work as a trucker.

¶5 Based on the advice he received from the LPN and the two VA counselors, on June 12, 2001, Rice notified Interstate Transport that he would not be returning to work. At that same time he filed a claim for unemployment benefits retroactive to June 10, 2001. On June 22, 2001, Dr. Winter concluded that Rice should not drive a motor vehicle and completed the necessary Department of Labor and Industry (Department) form to document that opinion.

¶6 The Department conducted a hearing on August 13, 2001, and issued its decision to deny benefits on August 17, 2001. The Department held that Rice was not qualified to receive benefits because he had not received the advice of a licenced practicing physician before resigning from his employment on June 12. Rice appealed the Department's decision to the Board of Labor and Appeals (Board) which held an additional hearing on September 7, 2001. The Board affirmed the Department's decision to deny benefits on September 11, 2001.

¶7 Rice appealed the Board's decision in the Nineteenth Judicial District Court pursuant to § 39-51-2410, MCA. The District Court's

3

review was limited to issues of law pursuant to § 39-51-2410(5), MCA. It concluded that the Department and the Board misinterpreted § 39-51-2302, MCA, and that Rice qualified for unemployment benefits because he demonstrated that he left work for "good cause." The State appeals the District Court's conclusions of law.

DISCUSSION

¶8 Does § 39-51-2302, MCA, bar Rice's claim for unemployment benefits?

¶9 Interpretation and construction of a statute is a matter of law which we review to determine whether the district court's conclusions are correct. *State v. Price*, 2002 MT 150, ¶ 15, 310 Mont. 320, ¶ 15, 50 P.3d 530, ¶ 15 (citation omitted). Construction of a statute requires this Court "simply to ascertain and declare what is in the terms or substance contained therein, not to insert what has been omitted or omit what has been inserted." Section 1-2-101, MCA.

¶10 The State contends that the District Court's interpretation of § 39-51-2302, MCA, is incorrect and that Rice is not eligible for unemployment because he failed to obtain a licensed and practicing physician's opinion before he resigned from his employment with Interstate Transfer. Rice did not file a Respondent's Brief.

¶11 Section 39-51-2302, MCA, provides in part:

> (1) An individual must be disqualified for benefits if the individual has left work without good cause attributable to the individual's employment.
> (2) The individual may not be disqualified if the individual leaves:
> (a) employment because of personal illness or injury not associated with misconduct upon the advice of a licenced and practicing physician and, after

4

recovering from the illness or injury when recovery is certified by a licensed and practicing physician, the individual returned to and offered service to the individual's employer and the individual's regular or comparable suitable work was not available, as determined by the department, provided the individual is otherwise eligible; or . . . .

¶12   The Board interpreted § 39-51-2302, MCA, to require advice from a licenced and practicing physician before an individual can resign from his job because of personal illness.  The District Court found that the Board's interpretation of the statute was too narrow and concluded that the advice of a licensed and practicing physician was not the exclusive method of showing "good cause" for leaving work.  We conclude that the District Court was correct.

¶13   Section 39-51-2302(1), MCA, disqualifies an employee for unemployment benefits if he voluntarily quits his job without good cause attributable to his job.  Rules 24.11.457(1)(a) and (2)(a), ARM, equate "good cause" with "undue risk" arising from the work environment.  Section 39-51-2302(2)(a), MCA, provides that an employee may not be disqualified from receiving benefits when the claimant quits his job based upon a doctor's recommendation and similar suitable work is unavailable when he is able to return to work.  This later section protects a person's right to receive benefits when the medical condition that caused the claimant to leave work no longer exists, yet the claimant cannot return to work because his or her job no longer exists.  The requirements of the two provisions are independent.

¶14   The State argues that because subsection 2(a) requires the medical advice that prompts a claimant to leave work to come from a

5

licensed physician prior to resigning, Rice is prohibited from receiving benefits because he did not receive advice from a "licensed and practicing physician" until after he resigned. The District Court concluded that while prior advice from a physician is an example of "good cause" specifically provided by statute, there is nothing in the language of the statute to suggest that there may not be other good causes for leaving employment. We agree with the District Court that to interpret the statute so narrowly would undermine the humane purpose for which unemployment insurance is provided.

¶15  In this case, after experiencing blackouts, Rice resigned from his employment based upon the advice of an LPN who conferred with a licensed and practicing doctor. To do otherwise would have been detrimental to his employer, the public and himself. Following a short delay, Rice's physician, Dr. Winter, concurred with the recommendation of the LPN and VA counselors and completed the required medical documentation, which indicated Rice was not to operate a motor vehicle. There is no question that Rice's blackouts prevent him from continuing his employment as a long haul truck driver. Accordingly, we hold that § 39-51-2302(1), MCA, does not require an employee to obtain a physician's advice prior to resigning from employment under these circumstances and Rice resigned from his job with "good cause."

¶16  For these reasons, we affirm the Order of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

6

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE